COPE (JUDSON v.).  See Case No. 7,565.

## Case No. 3,207.

### COPE et al. v. ROMEYNE et al.

[4 McLean, 384.]

Circuit Court, D. Michigan.  June Term, 1848.

FIXTURES—MORTGAGOR AND MORTGAGEE.

The mortgagee may remove that which is not a fixture, and which was placed or constructed on the ground, after the mortgage was executed, This is especially the case where the purchaser had no notice, and acted bona fide.

Mr. Emmons, for plaintiffs. .
Mr. Romeyn, for defendants.

OPINION OF THE COURT.  This is an action of trover. A mortgage was given to the Bank of the United States on the 8th of April, 1840, to secure the payment of the sum of ten thousand six hundred forty-one dollars and fifty-seven cents on lots fifteen, sixteen,. and seventeen, in Port Sheldon, a town on paper only, by the Port Sheldon Land Company. An association was formed, called the "Port Sheldon Land Company," in Michigan, to lay out a town, build a steam mill, and to make other improvements. The assignees of the bank bring this suit. Before action was commenced on the mortgage, the trustees of the land company released the equity of redemption to the plaintiffs. The loan was made to the company by the Bank of the United States, the 18th of April, 1838, which was negotiated by Mr. Jaudon, who was cashier of the bank, and was one of the land company. When the release of the equity of redemption was given, it was stipulated that the proceeds of the property should be applied in payment of the mortgage debt. Mr. Jaudon being sworn, stated that he acted as agent for the land company, and in that character purchased an engine to put into a saw mill, which they had constructed on one of the lots mortgaged. That being in possession in 1843, as agent, and one of the land owners, he took down the engine and shipped it, with its apparatus, to Detroit, accompanied by a bill of lading, which was indorsed to Romeyn, and which he indorsed to the "Bank of Sinclair." Romeyn was authorized to sell the engine, and he did sell it to the Bank of Sinclair, and indorsed to it the bill of lading. Pitts purchased it for the bank, in good faith, without notice from Romeyn, the bank having made advances on the engine. A bill was filed to foreclose the mortgage—defense withdrawn. No steps have been since taken on it. Mr. Jaudon says the release of the equity of the mortgage was released only on the condition that

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. John McLean, Circuit Justice.]

it should be in full payment of the mortgage, and the assignors so understood at the time of the assignment. The plaintiffs admitted, by a letter to Jaudon, 11th March, 1847, that the mortgage was limited to the lots expressed.

The counsel for the plaintiffs insist that the mortgagee, after forfeiture, may sue in trover for any part of the freehold, severed before or after the mortgage became due, though out of possession. 17 E. C. L. 272. Mortgager is less than a tenant. The personal property, when severed, still belongs to the mortgagee. Admits that if the mortgager had sold the property, including the engine, the title would have been good. But he insists that, the engine being severed, a sale by the mortgager does not give a good title. Recording acts have nothing to do with the present question. 3 Wend. 104; 8 Wend. 584; Pow. Mortg. note 165; 2 Greenl. 387; 33 E. C. L. 115; 1 Doug. 21, 256; 15 E. C. L. 486.

The only question which is raised by the pleadings is, whether the engine could properly be claimed by the mortgagees. At the time the mortgage was executed, there were no improvements on the lots. A saw mill was subsequently constructed. Now, it is admitted that all improvements, such as a saw mill, essentially connected with the freehold, could not be removed by the mortgagers. But •was the engine so connected as to make it the property of the mortgagees? It was necessary to the operation of the mill, but was it so attached to the soil, as a fixture, that the mortgagees could not remove it? The mortgagees, after building their mill, were not bound to keep it in operation, or to repair it. They, having erected it, had a right to abandon it. Had the improvements been on the premises at the time the mortgage was executed, the mortgagees, by an action, might have turned them out of possession, or restrained them from committing waste. The mortgage debt was due at the time the mortgage was given. But, if it be admitted that the engine was a fixture, and could not be severed from the freehold, that could not affect the right of the Bank of Sinclair. Pitts, the agent of the bank, purchased it, without notice, bona fide, and the bill of lading was indorsed to him by Romeyn, to whom the engine was consigned. The bill of lading, in regard to the transfer of the property, like a bill of exchange, is good, unless affected by notice. And it is not pretended that there was bad faith on the part of the Bank of Sinclair, or that its agent had notice. We think, therefore, that as a matter of law, the above facts being admitted, the jury must find the defendants not guilty. On this intimation, a non-suit was suffered, and a motion was afterward made to set it aside, which THE COURT overruled.